# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25- CR--268** |
| **JOSHUA LITTLE** | |
| *Defendant* | |

## MOTION TO EXCLUDE TIME
## PURSUANT TO THE SPEEDY TRIAL ACT

The United States of America respectfully submits this Motion to Exclude Time pursuant to the Speedy Trial Act and moves to exclude time from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h).

## FACTUAL BACKGROUND

**Offense on August 22, 2025 – 18 U.S.C. § 111(a), (b)**

1.      On August 22, 2025, at approximately 2130 hours, Homeland Security Investigations (HSI), the United States Marshals Service (USMS), the United States Secret Service (USSS), the Federal Bureau of Investigation (FBI), the DC Metropolitan Police Department (DCMPD), and the United States Park Police (USPP) were patrolling the area of Minnesota Avenue NE and Blane Street NE, Washington, DC 20019, a location known for high drug activity.

2.      At approximately 2138 hours, in the Citgo parking lot at 3820 Minnesota Avenue, NE, Washington, DC 20019, USMS Agents observed possible drug activity involving the person in the driver's seat of a dark grey Toyota Camry (later identified as Joshua Matthew LITTLE (PDID; 652961, DOB: 1993-03-04)) and an unknown subject on foot carrying a backpack.   The

license plate on the Camry was a Maryland tag 2GN4234.   The Camry was being driven by LITTLE.   LITTLE was clearly visible in surveillance video from the scene (obtained from Citgo) shortly before the incident when he momentarily got out of the Camry before the agents arrived.



Figures 1 and 2 – Joshua Matthew Little and unknown subject handoff of unknown product

3.     In addition, the license plate came back to the Enterprise Rent-A-Car company. According to Enterprise's records, the grey Camry was rented to Wanda Little-Grey (DOB 08/06/1957), residence 6732 Darby Road, Hyattsville MD.  The Camry was rented until Aug 24, 2025.  Little-Grey appears to be LITTLE's mother.

4.     After witnessing the suspected illegal activity, officers and agents began moving quickly through the parking lot to question and detain the individuals involved.

5.     The grey Camry was stopped at one of the gas pumps.   LITTLE was in the driver's seat and an unknown female was in the front passenger seat.     Several agents entered the Citgo wearing clothing identifying them as police.     After several of the agents – easily visibly identifiable as police – passed by the front of the Camry, LITTLE attempted to leave the parking lot by driving the car out through the exit.    HSI Special Agent Michael Grys encountered the Camry at the exit.   The agent attempted to stop the vehicle by standing in front of the vehicle and

3

shouting and signaling with a flashlight for the driver, LITTLE, to stop.     Instead, the Camry accelerated out of the parking lot, struck HSI Special Agent Grys, and fled the scene.     The agent suffered an impact to his left leg.



Figures 3 through 9 – Joshua Matthew Little assaulting and striking HSI Special Agent Grys with his vehicle.











**Offense on August 23, 2025 – 18 U.S.C. § 111(a), (b)**

6.       On August 23, 2025, the next day, at 3200 Minnesota Avenue, SE, Washington, DC, the same grey Camry was spotted by the U.S. Marshals and two Metro transit officers in three vehicles. LITTLE was again driving the Camry.  LITTLE's Camry was stopped at an intersection of Minnesota Avenue and Randle Circle in Southeast, Washington, DC.   The Marshals (using two SUVs and a pickup truck) surrounded and blocked the Camry in at that intersection in an attempt to stop it and arrest LITTLE. All of the vehicles had their emergency lights on and the positioning of the SUV and other vehicles made it obvious that they were attempting to box in and stop the Camry.  All of the Marshals and the two Metro transit officers then got out of their vehicles.  All were clearly marked as law enforcement officers and the two Metro Transit police officers were in their full uniforms.  As the lights from the surrounding vehicles continued to flash, the agents then issued commands to the driver to stop, get out of his car.

7.       Nonetheless, using the Camry, LITTLE then tried to escape the Marshals by rocking the Camry back and forth and then ramming one of the Marshals' SUVs in the open front and rear driver's side door, damaging both doors.  Deputy Marshal Daniel Benson was trying to get out of the rear driver's side door when LITTLE started to ram the SUV. Deputy Marshal Benson had to jump up onto the hood

of the Camry to avoid being pinned between the Camry and the law enforcement vehicles. Agents on scene had to deploy their tasers on LITTLE to get him to stop ramming the Marshals' SUV and trying to escape the scene.

8.  Mr. Little appeared to be intoxicated and numerous open liquor bottles were clearly visible in the Camry. The positioning of the cars following LITTLE's striking the Marshals' SUV is depicted in photographs below.



Figures 10 through 12 – Joshua Matthew Little's Camry after assaulting and striking the U.S.

Marshals' SUV





9.     LITTLE was placed under arrest.  LITTLE refused to identify himself and was not carrying

any identification.    Officers confirmed his identity by comparing him to a photo from a previous arrest (see below).



## PROCEDURAL HISTORY

10.    On August 25, 2025, Defendant Joshua little, was charged by Complaint with Assault on A Federal Officer using a Deadly Weapon, in violation of 18 U.S.C.§ 111(a) and (b).

11.    On August 26, 2025, the Defendant was arrested and had his Return on Arrest Warrant/Initial Appearance in font of Magistrate Judge Matthew J. Sharbaugh.  At this time, Benjamin Schiffelbein stood in for Melissa Jackson for the purposes of the proceedings.

12.    On August 27, 2025, defense counsel Melissa Jackson entered her appearance in this case.

13.    On August 28, 2025, a detention hearing was held for the Defendant.  At that time, the Defendant was held pending trial.  On that same date, the government made an oral motion for Speedy Trial that was heard and denied.  And a Preliminary Hearing was set for September 9, 2025.

14.    On September 5, 2025, the magistrate case for the Defendant was closed pending deadlines, motions, and excludables and the magistrate case was merged with Criminal Number 25-268 (JMC).

15.     On September 5, 2025, the defendant was indicted for violations of 18 U.S.C.§ 111(a) and (b) (Assault on A Federal Officer using a Deadly Weapon)

16.     On September 8, 2025, the hearing scheduled for September 9, 2025, was vacated. That day, the parties were directed to "contact the assigned District Judge to schedule a status hearing and arraignment, if one has not yet been set. The parties are instructed to address any requests to toll the Speedy Trial Act to the assigned District Judge."

17.     No additional hearing was conducted until November 12, 2025, when the defendant first appeared on the Indictment and was arraigned.

## DISCOVERY

18.     Discovery in this case is both voluminous and complicated because it involves two separate crime scenes and more than a dozen agents from a number of agencies including Homeland Security Investigations (HSI), the United States Marshals Service (USMS), the United States Secret Service (USSS), the Federal Bureau of Investigation (FBI), the DC Metropolitan Police Department (DCMPD), and the United States Park Police (USPP), from all over the country who all have varying policies as to body worn camera, which is a significant piece of the discovery obligation. Much of the discovery is voluminous because it is surveillance video from multiple locations, including private cameras and body worn cameras worn by the many officers involved.

19.     On August 27, 2025, the Defendant requested that arrangements be made to allow the Defendant's counsel to view the vehicle that the Defendant was driving on the dates at issue in the Indictment.

20.     The following discovery was made available to the Defendant on September 9, 2025, through evidence.com (Disco 1):

- Surveillance video of the Citgo on Minnesota Avenue (1 video)

- Surveillance video of the intersection of Minnesota and Randle Circle (1 video)

11

- Video of your client's post-arrest interview (1 video)

- 29 body worn camera videos (29 videos)

- Photos of the arrest scene, your client's car, and your client (38 photos)

21.    The following discovery was made available to the Defendant on October 1, 2025 (note that the Defendant believes that he did not actually have access to this discovery until November 3, 2025), through USAfx (Disco 2):

- 6D    Minnesota    Ave    SE    and    Randle    Circle    SE    6010    -    Camera    -211730-211900.mp4

- 12432217        6D_Minnesota_Ave_SE_and_Randle_Circle_SE_6010-Camera-211730-211900.mp

- 27063545 UNBLUR_-_OGC_-_(Clip_1)_LITTLE,_J_.mp4

- 326234094 UNBLUR_-_OGC_-_(Clip_2)_LITTLE,_J_ARREST.mp4

- 37329038 UNBLUR_-_OGC_-_(Clip_3)_LITTLE,_J._-_ARREST.mp4

- 350033644 UNBLUR_-_OGC_-_(Clip_4)_LITTLE,_Joshua_arrest.mp4

- 144439229 UNBLUR_-_OGC_-_(Clip_5)_LITTLE,_J_ARREST.mp4

- 258441718 UNBLUR_-_OGC_-_(Clip_6)_LITTLE,_J_-_ARREST.mp4

- 129274669 UNBLUR_-_OGC_-_(Clip_7)_Little,_J_Arrest.mp4

- 216318712 UNBLUR_-_OGC_-_(Clip_8)_Little,_J.mp4

- 313882591    UNBLUR_-_OGC_-_(Clip_9)_Little,_J_-_Arrest.mp4Surveillance video of the Citgo on Minnesota Avenue (1 video)

22.    The following discovery was made available to the Defendant on October 29, 2025, through USAfx (Disco 3):

- Reports

12

- CCN _ 25128244 - Combined Reports

- CCN _ 25128775 - Combined Reports

- DC Assault 08-22-2025.docx

- USM -11 Redacted.pdf

- Report Packet - 25128244 Offense_Incident_ Assault On A Fede

- 1_CCN _ 25128244 - Combined Reports.pdf

- 1_m1.jpg

- 1_Vehicle PD81.pdf

- 2_m1.jpg

- 2_Papering Cover Sheet - 25128244.pdf

- 3_Affidavit with Pics - HSI.docx

- 4_US Marshals_ Roster.pdf

- 5_Naples Notes - 25128244.pdf

- 6_Little Joshua.pdf

- 6_Vehicle PD81.pdf

- _Attachments.zip

- 1_m1.jpg

- 2_m1.jpg

23.     The following discovery was made available to the Defendant on November 4, 2025, through USAfx (Disco 4):

- CCTV

- 6DMinnesotaAveNEan_sStNEPTZ-Camera-01-2025-08-22-21-55-00-2025-08-22-22-30-00.g64x

- 6DMinnesotaAveNEan_sStNEPTZ-Camera-01-2025-08-22-21-55-00-2025-08-22-22-30-001.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-01-2025-08-22-21-55-00-2025-08-22-22-30-00.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-01-2025-08-22-21-55-00-2025-08-22-22-30-002.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-02-2025-08-22-21-55-00-2025-08-22-22-30-00.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-02-2025-08-22-21-55-00-2025-08-22-22-30-003.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-03-2025-08-22-21-55-00-2025-08-22-22-30-006.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-04-2025-08-22-21-55-00-2025-08-22-22-30-00.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-04-2025-08-22-21-55-00-2025-08-22-22-30-005.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-05-2025-08-22-21-55-00-2025-08-22-22-30-00.g64x

- 6DMinnesotaAveNEan_StNE6010-Camera-05-2025-08-22-21-55-00-2025-08-22-22-30-004.g64x

- 6DMinnesotaAveSEan_cleSEPTZ-Camera-01-2025-08-23-20-20-00-2025-08-23-20-21-0055.g64x

- 6DMinnesotaAveSEan_leSE6010-Camera-01-2025-08-23-20-20-00-2025-08-23-20-21-0011.g64x

14

- 6DMinnesotaAveSEan_leSE6010-Camera-02-2025-08-23-20-20-00-2025-08-23-20-21-0066.g64x

- 6DMinnesotaAveSEan_leSE6010-Camera-03-2025-08-23-20-20-00-2025-08-23-20-21-0044.g64x

- 6DMinnesotaAveSEan_leSE6010-Camera-04-2025-08-23-20-20-00-2025-08-23-20-21-0033.g64x

- 6DMinnesotaAveSEan_leSE6010-Camera-05-2025-08-23-20-20-00-2025-08-23-20-21-00.g64x

- 6DMinnesotaAveSEan_leSE6010-Camera-05-2025-08-23-20-20-00-2025-08-23-20-21-0022.g64x

24.     As of November 3, 21025, the Defendant had received more than 40 videos including complete body worn camera from more than 35 officers.  Defense counsel has subsequently asked for additional body worn camera video, surveillance video from nearby MPD CCTV cameras, and private surveillance.

25.     On November 5, 2025, a mere seven days before the arraignment, the Defendant made additional discovery requests of the government.

## ARGUMENT

26.     As noted above, discovery and plea negotiations have been underway for some time between the parties, and both are continuing, therefore the government believes that a tolling of the period between indictment and the Defendant's Arraignment would be beneficial for both discovery and plea purposes.   The government notes that the first tranche of discovery was made available to the defendant on September 9, 2025, and conversations about discovery have continued until mere days before the arraignment.

27.     18 U.S.C. § 3161(h)(7)(A) provides support for the sought exclusion of time.    It

15

specifically excludes from the speedy trial time requirements "any period of delay resulting from a continuance granted . . . at the request of the defendant or his counsel, or at the request of the attorney or the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

28.      "[D]elays resulting from plea negotiations" are excludable as delays "resulting from other proceedings concerning the defendant" within the meaning of § 3161(h)(1). *United States v. Ford*, 288 F. App'x 54, 57-58 (4th Cir. 2008) (summary order) (citing 18 U.S.C. § 3161(h); *United States v. Bowers*, 834 F.2d 607, 610 (6th Cir. 1987) and *United States v. Montoya*, 827 F.2d 143, 150 (7th Cir. 1987)); *see also United States v. Leftenant*, 341 F.3d 338, 344-45 (4th Cir. 2003) ("other proceedings" include plea negotiations between the parties).

29.      Moreover, several courts have held that continuances to permit additional time for plea negotiations are proper under § 3161(h)(7), the provision of the Speedy Trial Act authorizing continuances when doing so will serve "the ends of justice." *See, e.g.*, *United States v. Fabian*, 798 F. Supp. 2d 647, 673 (D. Md. 2011) ("[A]n 'ends of justice' exclusion is intended to cover any of various circumstances, including where . . . the government and the defendant are engaged in ongoing plea negotiations.") (citations omitted); *United States v. Fields*, 39 F.3d 439, 445 (3d Cir. 1994) ("Nothing in the language of 18 U.S.C. § 3161(h)(8) suggests that an 'ends of justice' continuance may not be granted for this purpose. In current federal practice, plea negotiations play a vital role.   We therefore see no reason why an 'ends of justice' continuance may not be granted in appropriate circumstances to permit plea negotiations to continue.").

30.      "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has

appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

31.     Here, seventy days since the indictment was made public is November 14, 2025.  And November 12, 2025, when the defendant was first arraigned and first appeared on the Indictment would be the "date the defendant has appeared before a judicial officer of the court in which such charge is pending."  The government also notes that the Defendant was arraigned on the indictment on that date as well, therefore in either case, seventy days have not yet expired requiring that the Defendant be tried, so the Court retains the power to toll time under the Speedy Trial Act *nunc pro tunc*.

32.     Here, the Government asks that the period from the Indictment through arraignment be excluded from computation under the Speedy Trial Act.   Such an exclusion serves the interests of justice and outweighs the interests of the public and the Defendant in a speedy trial.   As demonstrated above, the parties have already been using that time to engage in significant discovery and discussion of a pre-trial resolution.   The exclusion provides the government time to meet its discovery obligations, and the Defendant time to review the discovery with Counsel and for the parties to engage  in  meaningful  plea discussions. Further, should plea discussions fail, the requested exclusion will give the parties sufficient time to prepare for trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    */s/ Peter V. Roman*
Peter V. Roman
Assistant United States Attorney
D.C. Bar number: 984996
601 D. Street, NW,
Washington, DC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-CR-268** |
| **JOSHUA LITTLE** | |
| *Defendant* | |

## <u>ORDER</u>

Upon consideration of the Government's Consent Motion to Exclude Time Pursuant to the Speedy Trial Act, the Court finds as follows:

The parties are currently engaged in discovery obligations and plea negotiations and the government believed that a tolling of the time between the indictment and the arraignment would be beneficial for all parties. A plea disposition would serve the interests of justice because it would allow the parties to enter into a mutually acceptable and beneficial disposition and would also preserve the resources that might otherwise be expended in a trial.

The circumstances of this case permit such a delay and an exclusion of time during this period. Periods of delay that extend the time within which trial should commence include delays granted by the Court on the basis of a finding that the ends of justice are served by taking such action outweigh the best interest of the public and the Defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).

Therefore, because the interest of justice served by such a delay outweighs the interests of the defendant and the public in a speedy trial, IT IS HEREBY ORDERED that the Government's

motion is GRANTED; and

      IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3161(h)(7), that the period from the defendant's Indictment through his recent arraignment shall be excluded from computation under the Speedy Trial Act.

_____

The Honorable Jia M. Cobb
United States District Judge