**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-CR--268** |
| **JOSHUA LITTLE** | |
| *Defendant* | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing.  For the reasons set forth below, the United States respectfully requests that the Court impose a Guidelines-compliant sentence of 16 months' imprisonment, at the top of the guidelines range, divided between the two counts, to be served consecutively to reach a total of 16 months of continuous incarceration, to be followed by one year of supervised release.

## I.    FACTUAL BACKGROUND

**Offense on August 22, 2025 – 18 U.S.C. § 111(a)**

1.    On August 22, 2025, at approximately 2130 hours, Homeland Security Investigations (HSI), the United States Marshals Service (USMS), the United States Secret Service (USSS), the Federal Bureau of Investigation (FBI), the Metropolitan Police Department (MPD), and the United States Park Police (USPP) were patrolling the area of Minnesota Avenue, NE and Blane Street, NE, Washington, DC 20019, a location known for high drug activity.

2.    At approximately 2138 hours, USMS Agents observed possible drug activity in the Citgo parking lot at 3820 Minnesota Avenue, NE, Washington, DC 20019.

3.    After witnessing the suspected illegal activity, officers and agents began moving

2

quickly through the parking lot to question and detain the individuals involved.

4.      Parked at a gas pump was a grey Camry being driven by the Defendant.   The Defendant was in the driver's seat and an unknown female was in the front passenger seat. Several agents entered the Citgo wearing clothing identifying them as police.   After several of the agents – easily visibly identifiable as police – passed by the front of the Camry, the Defendant attempted to leave the parking lot by driving his car out through the exit.     HSI Special Agent M. G. encountered the Camry at the exit.    S A  M.G.  attempted to stop the Defendant by standing in front of his vehicle and shouting and signaling with a flashlight for the Defendant to stop. Instead, the Defendant accelerated out of the parking lot, struck HSI Special Agent M.G., and fled the scene.



*Figures 3 through 9 – Joshua Matthew Little assaulting and striking HSI Special Agent M.G. with his vehicle.*











**Offense on August 23, 2025 – 18 U.S.C. § 111(a)**

5.      On August 23, 2025, the next day, at approximately 2020 hours, at 3200 Minnesota Avenue, SE, Washington, DC, the same grey Camry was spotted by U.S. Marshals and two Metro Transit Police officers who were in three vehicles.   The Defendant was again driving the Camry. The Defendant's Camry was stopped at a stoplight at the intersection of Minnesota Avenue and Randle Circle in Southeast, Washington, DC.     The Marshals (using two SUVs and a pickup truck) surrounded and blocked the Camry in at that intersection to stop it and arrest the Defendant.   All of the vehicles had their emergency lights on and the positioning of the vehicles made it obvious that they were attempting to stop the Camry.   All of the Marshals and the two Metro Transit Police officers then got out of their vehicles.   All were clearly marked as law enforcement officers and the two Metro Transit Police officers were in their full uniforms.   As the lights from the surrounding vehicles continued to flash, the agents told the Defendant to get out of his car.

6.      Nonetheless, the Defendant tried to escape the Marshals by driving the Camry backwards and forwards and then ramming one of the Marshals' SUVs hitting the open front and rear driver's side door, damaging both doors.   Deputy Marshal D.B. was trying to get out of the

rear driver's side door when the Defendant started to ram the SUV.   Deputy D.B. had to jump up onto the hood of the Camry to avoid being pinned between the Camry and the law enforcement vehicles.   Agents on scene had to deploy their tasers on the Defendant to get him to stop ramming the Marshals' SUV and trying to escape the scene.

7.      The Defendant appeared to be intoxicated and numerous open liquor bottles were clearly visible in the Camry.   The positioning of the cars following the Defendant's striking the Marshals' SUV is depicted in photographs below.



*Figures 10 through 12 –the Defendant's Camry after striking the U.S. Marshals' SUV*





8.      The Defendant was placed under arrest.   The Defendant refused to identify himself and was not carrying any identification.    Officers confirmed his identity by comparing him to a photo from a previous arrest.

## PROCEDURAL HISTORY

9.      On August 25, 2025, the Defendant was charged by Complaint with Assaulting, Resisting, or Impeding Certain Officers or Employees using a Deadly Weapon (vehicle),  in violation of 18 U.S.C.§ 111(a) and (b).

10.     On August 28, 2025, a detention hearing was held for the Defendant.   At that time, the Defendant was held pending trial.

11.     On September 5, 2025, the Defendant was indicted for violations of 18 U.S.C. § 111(a) and (b) (Assaulting, Resisting, or Impeding Certain Officers or Employees Using a Deadly Weapon).

12.     On December 3, 2025, the government filed a Superseding Information charging the Defendant with two counts of violations of 18 U.S.C. § 111(a) (Assaulting, Resisting, or Impeding Certain Officers or Employees) (ECF 21).

13.     On January 5, 2026, the Defendant pled guilty to counts 1 and 2 of the Superseding Information.

14.     The Defendant is scheduled to be sentenced on March 31, 2026.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the

9

defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed –
   A) to reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B) to afford adequate deterrence to criminal conduct;
   C) to protect the public from further crimes of the defendant; and
   D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3) the kinds of sentences available;
4) the kinds of sentence and the sentencing range established for –
   A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i)    issued by the Sentencing Commission . . . ; and
      ii)   that . . . are in effect on the date the defendant is sentenced;
5) any pertinent policy statement –
   A) issued by the Sentencing Commission . . . and
   B) that . . . is in effect on the date the defendant is sentenced
6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7) the need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 551 U.S. 338, 348 (2007).

10

## GUIDELINES CALCULATION

As noted in the Government's Objections to the Draft PSR, the government's position is that the Draft PSR incorrectly calculates the Defendant's Offense Level for Count 1 of the Superseding Information and that the Court should rely instead on the Guidelines calculations used in the Plea Agreement (ECF 24). The government agrees with the Draft PSR's Guidelines calculations for Count 2. Draft PSR ¶ 31-36. In the Plea Agreement, the Offense Level calculation is based on the guideline for obstructing or impeding officers U.S.S.G. § 2A2.4, which assigns him a base offense level of 10. He then receives two additional offense levels because the two Counts do not group under U.S.S.G. § 3D1.4 resulting in an offense level of 12. He earns a two level reduction for his acceptance of responsibility under U.S.S.G. § 3E1.1 resulting in an offense level of 10. And, as the Draft PSR correctly found, the Defendant's criminal history places him in Criminal History Category III.

The Defendant's Offense Level and Criminal History Category indicate a Guidelines sentencing range of 10 to 16 months of incarceration; because the statutory maximum penalty for the offense of each conviction is 1 year, the effective Guidelines range is capped at 12 months of incarceration, absent the imposition of a consecutive sentence, in full or in part, on each of the two counts of conviction. To this end, should the Court choose to impose a sentence within the Guidelines range and above 12 months, which is in the lower third of the Defendant's recommended Guidelines range, the Court will need to divide the sentence between the two counts. *See* USSG § 5G1.2(d); *see also* Draft PSR at ¶ 100.

## ARGUMENT

The Defendant has a lengthy criminal history going back to at least 2011, when he was arrested for the first time. The Defendant's criminal history includes two prior convictions, three

cases pending at the time of his arrest in the instant case, sixteen prior arrests and one bench warrant. (ECF 3 (Bail Sheet) at 1.) His convictions include 1 conviction for possession with intent to distribute cocaine in 2020 (Draft PSR ¶ 47) and one for illegal possession of a handgun in 2017 (Draft PSR ¶ 46). Both of his post-incarceration periods of supervised release have ended unsatisfactorily. The Defendant's continuing disrespect for the law and for court supervision demand a significant sentence of incarceration. Accordingly, and for the reasons discussed in more detail below, the Government sees no basis to deviate from a Guidelines-compliant sentence of 16 months of incarceration.

### 1. The Nature, Circumstances, and Seriousness of the Offense

Here, the Defendant fled approaching law enforcement not once but twice in as many days. The first time, he used his car to hit an agent, who was on foot. Both times he fled, he showed extreme recklessness in his flight, seriously endangering the officers involved. The Defendant's conduct in this case was dangerous and demands a significant sentence.

### 2. The Defendant's History and Characteristics

As the Draft PSR recites, the Defendant is 33 years old and has a long history with the law, The Defendant's prior convictions have done nothing to dissuade him from continuing his reckless, dangerous, and illegal conduct. Both convictions were for serious conduct. In 2017, he pled guilty to Carrying a Handgun in Prince George's County. And then in 2020, he pled guilty to Possession With Intent to Distribute Cocaine in Prince George's County. Both convictions were for felonies and he faced significant jail time but did not receive it.

The Defendant's involvement in this case was not some kind of aberration from an otherwise reformed and law-abiding citizen. The Defendant was on release in three cases when he was arrested here (ECF 3 (Bail Sheet) at 3). He has never successfully completed supervised

12

release.   As part of his Court supervision, he has "not report[ed] for urinalysis on 30 different occasions." (Draft PSR ¶ 84.) Additionally, "the defendant tested positive for alcohol 11 times between September 2024 and February 2025; tested positive for marijuana 10 times between September 2024 and February 2025 (despite claiming not to have used marijuana since he was 15 (Draft PSR ¶ 82)); tested positive for cocaine 22 times between September 2023 and August 2025; and the defendant tested positive for PCP" at least once.   (Draft PSR ¶ 85.)

This is not even the Defendant's first arrest for resisting law enforcement.   In 2018, he was arrested in Prince George's County for Obstructing and Hindering Law Enforcement, Resisting Arrest, and Fleeing.   (Draft PSR at 21-22.)   In 2023, he was also arrested for Fleeing and Eluding Law Enforcement in Prince George's County.   (Draft PSR at 24.)     In the 2018 arrest, he was arrested for 2nd degree assault on a law enforcement officer after the Defendant tried to drive away from law enforcement and an officer had to get into the Defendant's car to avoid being dragged beside it.   (Draft PSR at 22.)

The Defendant's history and characteristics portray an individual with contempt for the law and a disregard for public safety and in particular the safety of the people who enforce the law. His sentence should reflect this history.

### 3.   The Need for the Sentence Imposed

The Defendant has repeatedly used his car and violence to avoid arrest over the course of his life.   Prior sentences do not seem to have deterred him from breaking the law, and defying and endangering the police.   (*See* Draft PSR at 22.)   A stiff sentence is required to demonstrate to the Defendant that he needs to respect the authority of law enforcement and the courts and not use violence against them in his reckless attempts to escape.   He should be deterred from doing so again by a significant sentence in this case.

13

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court impose a Guidelines compliant sentence totaling 16 months of incarceration, to be served consecutively, followed by one year of supervised release.

Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    _/s/ Peter V. Roman____
PETER V. ROMAN
Assistant United States Attorney

14